IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
BEAUMONT DIVISION

| | | |
|---|---|---|
| CORY GLENN ROLAND, | § | |
| *Plaintiff*, | § | |
| | § | |
| v. | § | CIVIL ACTION NO. 9:21-CV-254-MJT-CLS |
| | § | |
| NACOGDOCHES COUNTY, SALOMON | § | |
| LANDEROS, JUSTIN CODY PIERCE, | § | |
| AND JAY SMITH | § | |
| *Defendants*. | § | |

**REPORT AND RECOMMENDATION**
**ON DEFENDANTS' MOTIONS FOR SUMMARY JUDGMENT (DOCS. #37 AND 39)**

Pursuant to 28 U.S.C. § 636 and the Local Rules of Court for the Assignment of Duties to United States Magistrate Judges, the district court referred this proceeding to the undersigned United States magistrate judge for consideration and disposition of Defendants Nacogdoches County,[1] Justin Cody Pierce, and Jay Smith's Motion for Summary Judgment (doc. #37) and Defendant Salomon Landeros' Motion for Summary Judgment (doc. #39).

After review, the undersigned recommends granting summary judgment as to Defendants Justin Cody Smith and Jay Smith and denying summary judgment as to Defendant Salomon Landeros.

---

[1] All three Defendants (Nacogdoches County, Justin Cody Pierce, and Jay Smith) represented by Iglesias Law Firm, PLLC, "filed" Defendants' Motion for Summary Judgment "on the issue of qualified immunity." (Doc. #37 at 1). However, the remainder of the motion makes clear that these Defendants are only moving for summary judgment as to Pierce and Smith, and they are not asserting that Nacogdoches County is entitled to qualified immunity or moving for summary judgment as to Nacogdoches County. As such, the undersigned's Report and Recommendation only reviews whether Defendants' Motion for Summary Judgment (doc. #37) should be granted as to Pierce and Smith and makes no recommendation as to any matter concerning Nacogdoches County.

I.      **Background**

A.  Procedural History and Plaintiff's Claim

This case arises from events that occurred during a law enforcement interview at the Nacogdoches County Sherriff's Office.  On March 5, 2021, Plaintiff Cory Roland attended a voluntary interview with Defendant Salomon Landeros, Defendant Justin Cody Pierce, and Joshua Tipton (previously dismissed as a defendant in this suit), three law enforcement officers investigating Charles Seth Alexander, whom they suspected was involved in recent thefts in the area.  (Doc. #23 at ¶12 and Doc. #37.)  The previous day, Landeros and Pierce located a stolen vehicle at the house shared by Plaintiff and Alexander and determined that the vehicle contained a stolen air compressor.  (Doc. #37.)  Landeros, Pierce, and Smith believed that Plaintiff could provide them with additional information about Alexander's suspected criminal activity.  (Doc. #37.)  Importantly, Plaintiff did not attend the interview because he was in custody or under arrest—he attended the interview voluntarily to assist the officers with Alexander's criminal investigation (doc. 23 at ¶34), regardless of whether Defendants privately suspected Plaintiff's involvement in criminal activity and invited Plaintiff to the interview as a pretext (doc. #37). During this interview, a struggle ensued over Plaintiff's cellphone, which culminated in Landeros punching Plaintiff and seizing his phone.

On October 1, 2021, Plaintiff filed suit against Landeros, Pierce, Tipton, and Nacogdoches County, alleging claims under 42 U.S.C. § 1983 for violations of Plaintiff's Fourth and Fourteenth Amendment rights.  (Doc. #1 at ¶15.)  Plaintiff's original complaint asserts that Landeros violated his Fourth and Fourteenth Amendment rights by using excessive force in seizing Plaintiff's phone. (Doc. #1 at ¶¶14-28.)  Plaintiff's original complaint also asserts that Pierce and Tipton are liable for Landeros' use of excessive force for failing to intervene.  (Doc. #1 at ¶¶34-41.)  Plaintiff's

original complaint contains no factual allegations against the County but appears to claim in a separate section titled "Damages Sought" that Nacogdoches County is liable for its "deputy hiring, training, retention, and supervision policies," "permitting and ratifying conduct by its employees that violate the U.S. Constitution," and for "gross[] negligen[ce]."  (Doc. #1 at ¶¶46-47.)

On January 17, 2022, Plaintiff filed an Amended Complaint, adding Jay Smith as an additional defendant.  (Doc. #23.)  Plaintiff's amended complaint reiterates the claims in his original complaint as to Landeros, Pierce, Tipton, and Nacogdoches County. Plaintiff's amended complaint newly asserts that Defendant Jay Smith is liable for "intentionally misrepresenting the facts of the March 5th, 2021, assault on Cory Roland" in his report on the events of the interview. (Doc. #23 at ¶24.)  The parties jointly dismissed Joshua Tipton as a defendant from the suit on March 23, 2022.  (Doc. #34.)

On March 25, 2022, Defendants Pierce and Smith[2] moved for summary judgment, asserting qualified immunity.  (Doc. #37.)  Defendant Landeros also moved for summary judgment, asserting qualified immunity.  (Doc. #39.)  These two motions for summary judgment are pending before the court.  Plaintiff attempted to file a response to these two motions for summary judgment.  (Doc. #50.)  However, Plaintiff's counsel not only filed this response nearly ninety (90) days late in violation of the Local Rules of Court for the Eastern District of Texas,[3]

---

[2] As explained in *supra* n.1, Defendants' Motion for Summary Judgment (doc. #37) states that Nacogdoches County also "filed" this motion.  However, since the motion does not move for summary judgment as to Nacogdoches County, the undersigned will only refer to Pierce and Smith (the parties actually seeking summary judgment) in her review of this motion.

[3] Local Rule CV-7(e) states that a party opposing a motion has twenty-one (21) days from the date the motion was served in which to file a response and any supporting documents to a summary judgment motion.  Because Defendants filed their motions for summary judgment on March 25, 2022, Plaintiff's response was due April 15, 2022.  Plaintiff's counsel did not request an extension to file a response.  He filed his response on July 11, 2022, 108 days after Defendants filed their Motions for Summary Judgment and 87 days past the response deadline.  Plaintiff's counsel's blatant disregard for meeting his deadline obligations is not well-taken by this court.

but Plaintiff's untimely response also improperly included a "Cross Motion for Summary Judgment" in violation of the Local Rules.[4]  Because the response was improperly filed under Local Rule CV-7(a), Plaintiff's "Response and Cross Motion for Summary Judgment" (doc. #50) was stricken on August 17, 2022, and Plaintiff was directed to refile the response and cross motion as two separate documents.  (Doc. #53.)  Despite this direction from the undersigned, Plaintiff's counsel never refiled either a response or a cross motion.

### B.  Defendants' Factual Assertions

Defendant Landeros' Motion for Summary Judgment (doc. #39) claims the following are "undisputed" material facts.[5]  Defendants Pierce and Smith did not include a proper statement of undisputed material facts in their Motion for Summary Judgment (doc. #37) as required by Local Rule CV-56(a)(2), and instead only provided a narrative "Introduction and Facts" section; however, their factual allegations generally appear to track those stated in Defendant Landeros' motion.

Roland appeared for an interview on March 5, 2021.  During this interview, Plaintiff voluntarily showed his text messages to Landeros.  (Doc. #39 at ¶1.)  While viewing Plaintiff's text messages, Landeros observed a photo of an air compressor that he believed was potentially stolen.  (Doc. #39 at ¶2.)  Landeros asked Plaintiff to hand over the phone, and Plaintiff refused to do so.  (Doc. #39 at ¶3.)  Landeros then attempted to seize the phone, and Plaintiff resisted. (Doc. #39 at ¶4.)  Plaintiff then escalated his resistance, "pulling the phone away and then tucking

---

[4] Local Rule CV-7(a) states that each pleading, motion, or response to a motion must be filed as a separate document. To comply with this rule Plaintiff's counsel should have filed his response to Defendants' Motions for Summary Judgment as one document and his Cross Motion for Summary Judgment as a separate document, rather than combined the two.  The undersigned urges Plaintiff's counsel to take care to comply with the Local Rules and his professional duties.

[5] For the reasons discussed *infra* §§ I.C, II.A.2, the court cannot assume all of these "undisputed" facts are true, since they are not supported by admissible evidence—namely, the video footage of the interview.

the phone in tightly to the left side of his body (away from Investigator Landeros) with both of his arms and hands," and "grabbed Investigator Landeros' right hand, pulling [him] further toward Plaintiff's left side and further off balance."  (Doc. #39 at ¶¶5-6.)  Landeros then struck Plaintiff twice while stating "get back" and "don't move," and Plaintiff dropped his cell phone to the floor.  (Doc. #39 at ¶¶8-10.)  Landeros then "de-escalated" the situation, retrieved Plaintiff's phone from the floor and placed it on a desk, and continued the interview for another hour.  (Doc. #39 at ¶¶ 11, 13-14.)  Landeros' motion states that no injuries were visible on Plaintiff during the remainder of the interview and that Plaintiff "sat in the same posture and spoke the same during [the rest of the interview] as he did before the phone was seized."  (Doc. #39 at ¶¶15-16.)  Landeros later obtained a search warrant and searched Plaintiff's phone.  (Doc. #39 at ¶¶17-18.)

The undersigned notes that Defendant Landeros' statement of undisputed facts does *not* include the claim that Landeros struck Plaintiff in the arm and shoulder, as opposed to his face. Instead, Landeros refers heavily to the assertion that he only struck Plaintiff in the arm and shoulder throughout the rest of the motion, and many of Landeros' arguments as to why he is entitled to qualified immunity rely on this assertion.  (Doc. #39 at §§I, IV, VII(C)(1), VII(C)(3).)

C.  Video Footage

In accordance with Supreme Court and Fifth Circuit precedent, the undersigned also considers the facts established by the video footage from Defendant Pierce's body camera.  *See* Doc. #37, Def. Ex. 2 and Doc. #39, App'x 0057 [hereinafter Video]; *Scott v. Harris*, 550 U.S. 372, 380-81 (stating that the lower court should have viewed the facts in the light depicted by the videotape); *Crane v. City of Arlington*, No. 21-10644, 2022 WL 4592035, at *4 (5th Cir. Sept. 30, 2022) (citing *Harris v. Serpas*, 745 F.3d 767, 771 (5th Cir. 2014)).  The facts established in the video, and the material factual ambiguities evident from the video, are as follows.

During the interview, Defendants asked Plaintiff if he had any text messages with Alexander. (Video at 19:40-19:44.)  Plaintiff replied that he had "a few" and allowed Landeros to view these text messages by standing over Plaintiff's right shoulder while Plaintiff held his phone in his right hand and, presumably, scrolled through his text conversations with Alexander. (Video at 19:45-20:15.)  The video footage does not show the screen of Plaintiff's phone, so the exact nature of what Landeros was viewing is not apparent, and Defendants did not submit evidence showing the text messages on Plaintiff's phone.  Plaintiff remained seated and appeared calm and cooperative as he voluntarily showed Landeros these text messages.  As Plaintiff scrolls through his text messages, Landeros asks, "what is this?" referring to a picture he saw in the text messages. (Video at 20:14-20:16).  At this time, Plaintiff appears to stop scrolling by removing his thumb from the screen of his phone and holds his phone in position for Landeros to continue to view.  (Video at 20:16-20:19.)  Using his left finger, Landeros then scrolls to the picture in the messages while Plaintiff holds his phone, and Plaintiff replies that the picture is of a "compressor." (Video at 20:16-20:21.)  The undersigned notes, again, that, while the screen of the phone is not visible on the video footage, by closely watching Plaintiff's right hand as he holds his phone, it appears that Plaintiff was scrolling through his messages at a slow and continuous rate during the entire approximately thirty second period he was showing his phone to Landeros.

Landeros then appears to make a gesture with his left hand for Plaintiff to hand him the phone, and Plaintiff, still seated, responds calmly but firmly, "No, you cannot have my phone. You can look, but you cannot have my phone." (Video at 20:20-20:27.)  Landeros then grabs the phone with his left hand and attempts to take it out of Plaintiff's right hand, while starting to say, "Well I'm gonna—." (Video at 20:27.)  Plaintiff then jerks his right hand that is holding the phone over toward his left side, recoiling from Landeros' abrupt attempt to grab his phone. (Video

at 20:28.)  Landeros then leans his body over Plaintiff to reach the phone now held on Plaintiff's left side, and, with both hands, Landeros grabs Plaintiff's wrist and phone to forcefully pry it from Plaintiff's grip.  (Video at 20:28-20:30.)  The video footage then shows Landeros pull his right arm back in a fist and visibly punch Plaintiff at least once as Pierce and Tipton gather around Plaintiff and Landeros in response to the struggle.  (Video at 20:30-20:31.)  Just after the punches are delivered and the phone is dropped, Pierce and Tipton surround Plaintiff, and various exclamations are heard from the parties, such as Plaintiff yelling "what the hell" and Defendants yelling "get back," "what's wrong with you."  (Video at 20:31-20:35.)  Landeros states that they are seizing Plaintiff's phone as evidence.  (Video at 20:36-20:37.)  In the struggle, Plaintiff's phone drops to the ground, and Landeros picks it up and sets it on the other side of the room while Pierce and Tipton begin to move away from Plaintiff.  (Video at 20:35-20:42.)

        The exact area where Landeros punched Plaintiff and the number of punches Landeros delivered is not apparent from the video, because Plaintiff's body is partially obscured from view by Landeros' body and, thereafter, Pierce and Tipton's.  The undersigned, however, observes that the video definitively shows that the first punch landed in close proximity to the lower half of Plaintiff's face.  This indicates that the punch could have been delivered to a number of areas, including Plaintiff's upper shoulder, collar bone, neck, or face, but the exact area is not visible from the video footage.  The undersigned also observed that Plaintiff rubs his face after Landeros punched him, as if experiencing pain in that area, and he clears his throat, sniffs, and takes deep breaths, which further suggest his discomfort in that area.  (Video at 20:51-21:09.)  Additionally, Plaintiff later states that Landeros hit him in the face.  (Video at 55:36-55:38.)  The area hit by subsequent punches is completely obscured in the video footage.  The undersigned therefore finds

7

that the video is, at best, ambiguous as to whether Landeros punched Plaintiff in the face but is highly suggestive of that fact.  Thus, the area punched is a disputed fact.

The undersigned also finds that the video is ambiguous as to whether Plaintiff "resisted" Landeros or "escalated" his resistance. Defendant Landeros asserts that this is an "undisputed" fact.  (Doc. #39 at ¶¶4-5.)  However, a reasonable juror could find the footage shows that Plaintiff did not resist; rather, Plaintiff recoiling his hand away from Landeros' attempt to grab his phone (Video at 20:28) was merely an instinctual, involuntary movement that does not amount to "resistance."  The undersigned finds that the video is ambiguous as to whether, and to what degree, Plaintiff may have "resisted" and leaves this fact for the jury to decide.  The undersigned further notes that, even if a jury found that Plaintiff did resist, this still would not necessarily resolve the question of whether Landeros' use of force was excessive, as that determination requires an analysis of whether the force was reasonable in light of Plaintiff's level of resistance and other relevant facts and legal considerations.  *See infra* § II.B.1.

Additionally, the undersigned finds that the video is ambiguous as to whether Plaintiff suffered an "injury" within the meaning of an excessive force claim.  Defendant Landeros' motion states that Plaintiff remained sitting "in the same posture and spoke the same" after he was punched for the rest of the interview, as the sole "undisputed" support for the assertion that Plaintiff did not suffer an injury.  (Doc. #39 at ¶¶14, 16.)  However, it is not clear from the video whether and to what extent Plaintiff is injured.  The camera quality from the video footage is poor, and the camera is positioned across the room from Plaintiff, at least several feet away.  It is possible that Plaintiff may have had marks from the punches, but such marks are simply not visible in the video footage.  Additionally, as noted previously, Plaintiff is seen rubbing his face and sniffing after the punches, which suggests he is experiencing pain.  Plaintiff also later states that

he had suffered a previous head injury (Video at 22:16-22:20, 22:47-22:58) and that Landeros' punches caused the pain from his headache to increase significantly (Video at 23:43-23:48), contradicting Landeros' allegation that Plaintiff did not suffer an injury and was otherwise unaffected by the punches.

Further, the undersigned finds that the video is ambiguous as to whether Landeros observed anything in Plaintiff's text messages establishing sufficient probable cause to seize Plaintiff's phone pursuant to the warrant exception from the plain view doctrine.  The video footage does not show the screen of Plaintiff's phone at any point, so it does not show exactly what Landeros observed that caused him to believe there was evidence of criminal activity on Plaintiff's phone.  Further, Defendants never submitted any evidence from Plaintiff's phone to the court,[6] so the only support for Landeros' factual assertion that he "observed" evidence of criminal activity on Plaintiff's phone, sufficient to grant him probable cause to seize the phone under the plain view exception, is the assertion itself.  Although Plaintiff's complaint does not allege that this was an unconstitutional seizure in violation of his Fourth Amendment rights, the constitutionality of Landeros' seizure of Plaintiff's phone is relevant to the excessive force analysis, which considers the "governmental interest at stake" in effecting the seizure.  *See infra* § II.B.1.  Here, the asserted governmental interest is the alleged need to preserve evidence.  Thus, the fact of whether there was probable cause to believe the phone contained evidence is material.

---

[6] Defendants did submit Pierce's affidavit that was used to obtain the search warrant for Plaintiff's phone, which granted the search warrant upon a finding of probable caused based on the allegations contained therein.  (Doc. #37 Ex. 1 at 9, and Doc. #39, App'x 0092.)  However, the affidavit merely restates the factual allegations contained in Defendants' motions regarding what Landeros observed on the phone and his reasons for believing it indicating potential criminal activity.  Defendants obtained a search warrant, finding probable cause, based on these allegations alone.  To date, no images, screenshots of text messages, or any other evidence from Plaintiff's phone have been submitted to the court.

Relatedly, the video is ambiguous as to whether Plaintiff was doing anything to suggest that he was likely to destroy evidence, such as by damaging his phone or deleting his text messages.  The video does not show Plaintiff making any furtive movements with the hand holding his phone that would suggest he was attempting to delete his messages, and the screen of the phone is not shown in the footage.  Indeed, there is nothing in the video that suggests Plaintiff attempted to hide any evidence from Landeros.  The undersigned, viewing the footage, finds that the video does not suggest at any point that Plaintiff was likely to destroy evidence on his phone but again leaves this question for the jury to ultimately decide.

## II.     Legal Standard

### A.   Summary Judgment

#### 1.   *Generally*

Summary judgment should only be granted if the moving party can show that "there is no genuine dispute as to any material fact and that the movant is entitled to judgment as a matter of law."  FED. R. CIV. P. 56(a).  This rule places the initial burden on the moving party to identify those portions of the record which it believes demonstrate the absence of a genuine issue of material fact.  *See Celotex Corp. v. Catrett,* 477 U.S. 317, 323 (1986); *Stults v. Conoco, Inc.* 76 F.3d 651, 655-56 (5th Cir. 1996) (citations omitted).  An issue is genuine if the evidence is sufficient for a reasonable jury to return a verdict for the non-moving party.  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255-56 (1986).  A fact is material when it is relevant or necessary to the ultimate conclusion of the case.  *Id.* at 248.  The movant's burden is only to point out the absence of evidence supporting the nonmovant's case.  *Skotak v. Tenneco Resins, Inc.*, 953 F.2d 909, 913 (5th Cir.); *cert. denied*, 506 U.S. 832 (1992).

Once the moving party has carried its burden of demonstrating that the absence of a genuine issue of material fact, the nonmoving party bears the burden of coming forward with "specific facts showing that there is a genuine issue for trial." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).  In considering a motion for summary judgment, "the evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in his favor." *Liberty Lobby, Inc.*, 477 U.S. at 255.  However, the non-movant may not rest on mere allegations or denials of its pleadings but must respond by setting forth specific facts indicating a genuine issue for trial. *Webb v. Cardiothoracic Surgery Assocs. of North Texas, P.A.*, 139 F.3d 532, 536 (5th Cir. 1998).  The court must consider all the evidence but refrain from making any credibility determinations or weighing the evidence.  *See Turner v. Baylor Richardson Med. Ctr.*, 476 F.3d 337, 343 (5th Cir. 2007) (citation omitted).

Mere conclusory allegations are not competent summary judgment evidence, and thus are insufficient to defeat a motion for summary judgment. *Eason v. Thaler*, 73 F.3d 1322, 1325 (5th Cir. 1996).  Unsubstantiated assertions, improbable inferences, and unsupported speculation are not competent summary judgment evidence. *See Forsyth v. Barr*, 19 F.3d 1527, 1533 (5th Cir.), *cert. denied*, 513 U.S. 871 (1994).  The party opposing summary judgment is required to identify specific evidence in the record and articulate the precise manner in which that evidence supports his claim. *Ragas v. Tenn. Gas Pipeline Co.*, 136 F.3d 455, 458 (5th Cir. 1998).  Rule 56 does not impose a duty on the court to "sift through the record in search of evidence" to support the nonmovant's opposition to the motion for summary judgment. *Id.*; *see also Skotak*, 953 F.2d at 915–16 & n.7; Fed. R. Civ. P. 56(c)(3) ("[T]he court need consider only the cited materials.").  If the nonmoving party fails to make a showing sufficient to establish the existence of an element

essential to its case and on which it will bear the burden of proof at trial, summary judgment must be granted.  *Celotex*, 477 U.S. at 322–23.

### 2.   *The Role of Video Evidence in Summary Judgment*

Significantly, as discussed *supra* § I.A, Plaintiff's counsel's improper "Response and Cross Motion for Summary Judgment" (doc. #50) was stricken from the record per the undersigned's August 17, 2022, *Order* (doc. #53).  Plaintiff counsel never refiled his response, despite having ample opportunity to do so—a very unfortunate and unprofessional decision that the undersigned strongly condemns.  The consequence of this unwise decision from Plaintiff's counsel is that (1) Plaintiff, the nonmoving party, has failed to submit any evidence to show there is a genuine issue for trial, which almost always results in summary judgment being granted for the moving party; and (2) per Local Rule CV-56(c), the undersigned must assume that the facts as claimed and supported by admissible evidence by Defendants, the moving parties, are admitted by Plaintiff to exist without controversy.

However, Plaintiff's claim can survive his counsel's failure to file a response to Defendants' Motions for Summary Judgment for one reason only: the video footage, submitted by Defendants, does not support several of their asserted "undisputed" material facts for the reasons discussed *supra* § I.C.

First, as explained earlier, the undersigned is guided by Fifth Circuit and Supreme Court precedent explaining the role of video evidence at the summary judgment stage.  When the record includes video evidence, courts are not bound to accept facts contradicted by the video.  *Crane*, 2022 WL 4592035, at *4 (citing *Harris v. Serpas*, 745 F.3d at 771).  To the extent that video evidence leaves certain facts ambiguous, courts must leave such ambiguities in materials facts to be resolved by the jury.  *Cf. Crane*, 2022 WL 4592035, at *4 (quoting *Estate of Aguirre v. City of*

*San Antonio*, 995 F.3d 395, 410 (5th Cir. 2021)) ("*Scott* was not an invitation for trial courts to abandon standard principles of summary judgment by making credibility determinations or otherwise weighing the parties' opposing evidence against each other any time a video is introduced into evidence."); *see also Scott v. Harris*, 550 U.S at 381 ("[The lower court] should have viewed the facts in the light depicted by the videotape.").

Second, the undersigned is guided by this district's Local Rules, which only require the undersigned to assume facts from the moving party that are *supported* by admissible evidence. LOCAL RULE CV-56(c).  The undersigned need not assume facts from the moving party that are contradicted by admissible evidence, such as video evidence—regardless of whether those facts are also controverted by a response from the nonmoving party.

Therefore, the undersigned evaluates Defendants' claims that they are entitled to summary judgment on grounds of qualified immunity "in the light depicted by the videotape," rather than accepting all of Defendants' factual allegations as true, despite the failure of Plaintiff's counsel to submit a response controverting those facts.  *Scott v. Harris*, 550 U.S. at 381.

### B.  Qualified Immunity

The doctrine of qualified immunity protects officials, such as law enforcement officers, from civil liability for action taken in their official capacity as long as their conduct does not violate clearly established law of which a reasonable person would have known.  *Mullenix v. Luna*, 577 U.S. 7, 11 (2015) (per curiam).  When a party moves for summary judgment asserting qualified immunity, the analysis involves a two-pronged inquiry.  *Aguirre*, 995 F.3d at 406.  First, "whether the facts, taken in the light most favorable to the party asserting the injury, show the officer's conduct violated a federal right."  *Id.* (quoting *Tolan v. Cotton*, 572 U.S. 650, 655-56

(2014)).  Second, "whether . . . the right in question was 'clearly established' at the time of the violation."  *Id.* (quoting *Tolan*, 572 U.S. at 656).

### 1.  *Constitutional Violation Prong*

Here, the alleged constitutional violation is excessive force.  To prevail on his excessive force claim, Plaintiff must show "(1) injury, (2) which resulted directly and only from a use of force that was clearly excessive, and (3) the excessiveness of which was clearly unreasonable." *Cooper v. Brown*, 844 F.3d 517, 522 (2016) (quoting *Elizondo v. Green*, 671 F.3d 506, 510 (5th Cir. 2012)).

Excessive force claims are analyzed under the Fourth Amendment's "objective reasonableness" standard.  *Graham v. Connor*, 490 U.S. 386, 388 (1989).  In determining whether the force used to effect a seizure is "reasonable" under the Fourth Amendment, courts must apply a "careful balancing of 'the nature and quality of the intrusion on the individual's Fourth Amendment interest' against the countervailing governmental interests at stake."  *Id.* at 396 (quoting *Tennessee v. Garner*, 471 U.S. 1, 8 (1985)).  Reasonableness is judged from the perspective of a reasonable officer on the scene, "rather than with the 20/20 vision of hindsight." *Id.* (citing *Terry v. Ohio*, 392 U.S. 1, 20-22 (1968)).  Additionally, the reasonableness inquiry should account for the fact that law enforcement may have to make split-second judgments and, as an objective standard, disregard the officer's underlying intent or motivation.  *Id.* at 396-97. Evaluating reasonableness requires close analysis of the facts and circumstances of a particular case, particularly the *Graham* factors which include "the severity of the crime at issue, whether the suspect poses an immediate threat to the safety of the officers or others, and whether he is actively resisting arrest or attempting to evade arrest by flight."  *Id.* (citing *Tennessee v. Garner*, 471 U.S. at 8-9).

### 2. *Clearly Established Prong*

Even if a constitutional violation has been committed, qualified immunity shields officials from civil liability unless that right is clearly established, meaning that "a decision that, even if constitutionally deficient, reasonably misapprehends the law governing the circumstances" will still be protected. *Brousseau v. Haugen*, 543 U.S. 194, 198 (2004) (citing *Saucier v. Katz*, 533 U.S. 194, 206 (2001)). The purpose of the "clearly established" inquiry is to determine whether the officer "had fair notice that [his] conduct was unlawful." *Crane*, 2022 WL 4592035, at *8 (quoting *Brousseau*, 543 U.S. at 198). Qualified immunity applies unless the law clearly establishes that the official's conduct violated a federal right at the time the conduct took place. *Brousseau*, 543 U.S. at 194.

Importantly, this inquiry "must be undertaken in light of the specific context of the case, not as a broad general proposition." *Saucier v. Katz*, 533 U.S. at 201. There need not be a case directly on point, but "'existing precedent must have placed the statutory or constitutional question beyond debate.'" *Crane*, 2022 WL 4592035, at *8 (quoting *Ashcroft v. al-Kidd*, 563 U.S. 731, 741 (2011)). In other words, "[t]he contours of the right must be sufficiently clear that a reasonable official would understand that what he is doing violates that right." *Id.* at 202 (quoting *Anderson v. Creighton*, 483 U.S. 635, 640 (1987)). Therefore, in considering the clearly established prong, the proper inquiry is "whether it would be clear to a reasonable officer that his conduct was unlawful in the situation he confronted." *Id.* (citing *Wilson v. Layne*, 526 U.S. 603, 615 (1999)).

15

### III.    Discussion

#### A.  Jay Smith is Entitled to Qualified Immunity

Plaintiff asserts that Defendant Smith is liable for "intentionally misrepresenting the facts of the March 5th, 2021, assault on Cory Roland" in his report of the events of the interview.  (Doc. #23 at ¶24.)  To survive Defendants' Motion for Summary Judgment (doc. #37) as to Smith, Plaintiff must demonstrate that Smith violated his constitutional rights and that this right was clearly established.

Because Plaintiff's counsel did not file a response, Plaintiff has not directly "demonstrated" any facts in response to Defendants' Motion for Summary Judgment. Further, Smith was not present at the March 5, 2021 interview, so none of the facts alleged in Defendants' motion about Smith can be contradicted by video evidence.  Therefore, the undersigned could find that Smith is entitled to summary judgment on grounds of qualified immunity because Plaintiff has failed to meet his burden of demonstrating, directly or "indirectly" through video evidence, that Smith is not entitled to qualified immunity.  *See Kovavic v. Villarreal*, 628 F.3d 209, 211 (5th Cir. 2011) (citing *McClendon v. City of Columbia*, 305 F.3d 314, 323 (5th Cir. 2002)) ("Once a defendant invokes qualified immunity, the burden shifts to the plaintiff to show that the defense is not available.").

Moreover, Smith is entitled to qualified immunity because Plaintiff cannot prove a violation of a clearly established constitutional right.  As explained in *Smith v. Patri*, 99 Fed. App'x 497, 498 (5th Cir. 2004), "there is no right to a completely accurate police report."  *See also Rich v. Palko*, 920 F.3d 288, 297 (5th Cir. 2019) (finding there is no clearly established constitutional right "to be free from inaccuracies in an after-the-fact police report").  Therefore, even if Smith "intentionally misrepresented" facts in his report (which Plaintiff has not

demonstrated), such misrepresentation would not constitute a violation of a clearly established right.  Thus, Smith is entitled to qualified immunity, and summary judgment should be granted as to Defendant Jay Smith.

### B.   Justice Cody Pierce is Entitled to Qualified Immunity

Plaintiff asserts that Defendant Pierce is liable for failing prevent Landeros' use of excessive force on Plaintiff.  (Doc. #23 at ¶50.)  Officers can be subject to "bystander liability" for another officer's constitutional violation if an officer present at the scene fails take reasonable measures to protect a person from another officer's use of excessive force.  *Hale v. Townley*, 45 F.3d 914, 919 (5th Cir. 1995).  To establish bystander liability, Plaintiff must demonstrate that Pierce (1) knew that Landeros was violating Plaintiff's constitutional rights, (2) had a reasonable opportunity to prevent the harm, and (3) chose not to act.  *Whitley v. Hanna*, 726 F.3d 631, 646 (5th Cir. 2013).

Here, assuming that Plaintiff can satisfy the first element of bystander liability that Landeros indeed violated his constitutional rights by using excessive force and that Pierce knew this, Plaintiff cannot establish that Pierce had a reasonable opportunity to prevent the harm.  The duration of the whole altercation was approximately five seconds (Video at 20:28-20:33), and the punches—giving rise to the excessive force claim—occurred within approximately two seconds of this already-short window (Video at 20:30-20:32).  Additionally, the video footage shows that Pierce, along with Tipton, stood up and reacted within approximately three seconds of the altercation (Video at 20:30-20:31) and, at most, one second before the first punch was delivered. The short time frame of these events shown in the video footage shows that Pierce did not have a reasonable opportunity to prevent Landeros from using excessive force on Plaintiff, so Plaintiff, at the very least, cannot establish the second element of bystander liability.  Therefore, Pierce is

not liable for Landeros' alleged use of excessive force.  Pierce is entitled to qualified immunity, and summary judgment should be granted as to Defendant Justin Cody Pierce.

C.  Salomon Landeros is not Entitled Qualified Immunity

Plaintiff alleges that Defendant Landeros violated Plaintiff's constitutional rights by using excessive force to seize his phone.  Landeros asserts that he is entitled to qualified immunity because (1) his conduct was objectively reasonable, so it did not violate Plaintiff's constitutional rights, and (2) he did not violate clearly established law.

As discussed *supra* § II.A.2, the undersigned evaluates Landeros' conduct as depicted in the video footage.  Thus, for the reasons, discussed *supra* § I.C, the undersigned finds that the following material facts are ambiguous from the video footage: (1) whether Landeros punched Plaintiff twice in the face; (2) whether Plaintiff was resisting Landeros; (3) whether Plaintiff was injured; (4) whether Landeros had sufficient probable cause to seize Plaintiff's phone; and (5) whether there was a risk of Plaintiff destroying evidence from his phone.

These facts are highly relevant to the excessive force analysis, as they directly interact with the *Graham* factors involved in balancing the nature and quality of the force used with the countervailing government interest in applying that force.  Per the first factor, the severity of the "crime" at issue, a jury could find upon watching the video that Plaintiff committed no crime and was not likely to commit a crime.  A jury could also find that Plaintiff posed no threat to Landeros' safety as required by the second factor—whether the suspect poses an immediate threat to officer safety.  The third factor, whether the suspect is actively resisting arrest or attempting to flee, further supports a finding that Landeros used excessive force against Plaintiff, since a jury could find he was not resisting arrest (or even under arrest) or fleeing.  As such, a reasonable jury could find that the video footage shows that Landeros punched Plaintiff, a cooperating witness who was

not resisting arrest or destroying evidence, in the face. A jury could further conclude that Landeros' use of force was "clearly excessive," the excessiveness of this force was "clearly unreasonable," and that Plaintiff was injured within the meaning of the excessive force analysis.[7]

Thus, the undersigned finds that a reasonable juror could conclude from watching the video footage that Landeros used excessive force in seizing Plaintiff's phone, thereby committing a constitutional violation and satisfying the first prong in the qualified immunity inquiry.

The undersigned now turns to whether Landeros' conduct violated clearly established law. In support of his motion for summary judgment, Landeros cites to cases wherein the Fifth Circuit affirmed that officers were entitled to qualified immunity when they seized evidence from a person, who was attempting to destroy that evidence by swallowing it, by choking the person and prying open their mouth. *See Espinoza v. United States*, 278 F.2d 802, 803-04 (5th Cir. 1960); *Williams v. Bramer*, 180 F.3d at 702; *Surratt v. McClarin*, 851 F.3d 389, 390 (5th Cir. 2017). The facts of these cases do not resemble the facts of the matter before the court today. In those cases, the plaintiff was actively and indisputably attempting to destroy evidence in a way that would almost certainly be successful but for the officer's quick action to thwart that attempt. Those plaintiffs were also under arrest or otherwise in custody. In contrast, the video does not suggest that Plaintiff was attempting to destroy evidence on his phone and was instead cooperative with Landeros' requests for information throughout the interview. Further, Plaintiff was not under

---

[7] Plaintiff is not required to show a significant injury to succeed on an excessive force claim. *Williams v. Bramer*, 180 F.3d 699, 703 (5th Cir. 1999). The injury need only be more than *de minimis*. *Id.* To determine whether an injury is more than *de minimis*, courts should consider the context in which the force was deployed, as "amount of injury necessary to satisfy [this element] . . . is directly related to the amount of force that is constitutionally permissible under the circumstances." *Id.* at 703-04 (quoting *Ikerd v. Blair*, 101 F.3d 430, 434 (5th Cir. 1996)). Additionally, even insignificant injuries such as suffering from dizziness, loss of breath, and coughing, satisfy this element "when the victim is maliciously assaulted by a police officer." *Id.* at 704. Because a reasonable jury could find that Plaintiff was not resisting or destroying evidence, thus no use of force was justified under these circumstances, it could also properly find that an injury such as pain from being punched in the face (let alone potentially severe pain from exacerbating a prior head injury) satisfies this element of Plaintiff's excessive force claim.

arrest or even in custody at any point—he was speaking with Landeros voluntarily to assist in the investigation of another person's suspected criminal activity.  These cases do not support Landeros' claim that he is entitled to qualified immunity, and they certainly do not impliedly "condone" the force Landeros used (doc. #39 at 21).

Other cases cited by Landeros also fall short as they are factually distinguishable for similar reasons.  In *Poole v. City of Shreveport*, 691 F.3d 624 (5th Cir. 2012), the plaintiff was intoxicated, under arrest for reckless driving, verbally arguing with the officer, and physically resisting arrest.  This is the kind of "rapidly evolving" and potentially dangerous situation involving "split-second" decisions that qualified immunity protects.  In contrast, no such necessity or urgency was present in the situation between Plaintiff and Landeros when Landeros delivered the punches.  Landeros' comparison to *Griggs v. Brewer*, 841 F.3d 308 (5th Cir. 2016), similarly fails as factually distinguishable since the plaintiff there was also intoxicated, under arrest, and resisting arrest.

Landeros' motion also cites *Terry v. Ohio*, 392 U.S. 1, 5, (1968) to support his claim that his use of force was objectively reasonable.  However, *Terry* bears almost no factual similarities to this case.  In *Terry*, the plaintiffs were *in custody*, and the officer merely conducted a pat-down of their outer clothing for the sole purpose of confirming that the plaintiffs were not carrying weapons.  This use of "force" bears no similarities to Landeros punching Plaintiff in the face to seize a phone.

Landeros additionally cites to *Illinois v. McArthur*, 531 U.S. 326 (2001), where the use of "force" at issue was restraining a suspect from entering his home unaccompanied to ensure he did not destroy evidence while the home was being searched.  Again, the use of "force" there is not

analogous, as an unaccompanied suspect would have had ample opportunity to destroy evidence in his home, unlike Plaintiff here.

Turning to cases that *are* relevant, the Fifth Circuit has suggested on multiple occasions that "a constitutional violation occurs when an officer tases, strikes, or violently slams an arrestee who is not actively resisting arrest. *Darden v. City of Fort Worth*, 880 F.3d 722, 731 (5th Cir. 2018) (citing *Ramirez v. Martinez*, 716 F.3d 369, 377-78 (5th Cir. 2013); *Newman v. Guedry*, 703 F.3d 757, 762-63 (5th Cir. 2012); *Bush v. Strain*, 513 F.3d 492, 501 (5th Cir. 2008)). Moreover, Fifth Circuit case law clearly establishes that, when an arrestee is not actively resisting arrest, the degree of force an officer can use is reduced. *Darden*, 880 F.3d at 731 (citations omitted). As noted in *Darden*, the following cases guide a court's qualified immunity analysis for the use of force against non-resisting arrestee: in *Bush*, 513 F.3d at 502 it was objectively unreasonable for an officer to slam an arrestee's face into a vehicle when the arrestee was not resisting arrest or attempting to flee; in *Newman*, 703 F.3d at 763, it was objectively unreasonable to tase and strike an arrestee without first resorting to less violent means when the arrestee was not actively resisting. Indeed, *Darden* itself explicitly held that "at the time of the alleged misconduct [at issue in *Darden*], it was *clearly established that violently slamming or striking a suspect who is not actively resisting arrest constitutes excessive use of force.*" 880 F.3d at 733 (emphasis added). The determination that Landeros' decision to punch a non-resisting Plaintiff violated clearly established law is further supported by these Fifth Circuit cases when one considers that Plaintiff was not even under arrest when the use of force occurred. Moreover, "'in an obvious case,' the *Graham* excessive-force factors themselves 'can clearly establish the answer, even without a body of relevant case law.'" *Newman*, 703 F.3d at 764 (quoting *Brousseau*, 542 U.S. at 199).

The undersigned finds that Landeros violated clearly established law in his use of excessive force on Plaintiff.  In reaching this conclusion, the undersigned also notes the following Fifth Circuit guidance on the "clearly established" prong:

> The central concept is that of "fair warning": The law can be clearly established "despite notable factual distinctions between the precedents relied on and the cases then before the Court, so long as prior decisions gave reasonable warning that the conduct then at issue violated constitutional rights."

*Kinney v. Weaver*, 367 F.3d 337, 350 (5th Cir. 2004) (quoting *Hope v. Pelzer*, 536 U.S. 730, 740 (2002)).

For these reasons, Landeros is not entitled to qualified immunity, and summary judgment should be denied as to Defendant Salomon Landeros.

### IV.    Recommendation

For the foregoing reasons, the undersigned recommends that Defendants Nacogdoches County, Justin Cody Pierce, and Jay Smith's Motion for Summary Judgment (doc. #37) be **GRANTED** with respect to Defendants Pierce and Smith on the ground that they are entitled to qualified immunity.  The undersigned recommends that Defendant Salomon Landeros' Motion for Summary Judgment (doc. #39) be **DENIED** on the ground that Landeros is not entitled to qualified immunity.

### V.    Objections

Within fourteen (14) days after service of the magistrate judge's report, any party must serve and file specific written objections to the findings and recommendations of the magistrate judge.  28 U.S.C. § 636(b)(1)(C).  To be specific, an objection must identify the specific finding or recommendation to which objection is made, state the basis for the objection, and specify the place in the magistrate judge's report and recommendation where the disputed determination is

found.  An objection that merely incorporates by reference or refers to the briefing before the magistrate judge is not specific.

Failure to file specific, written objections will bar the party from appealing the unobjected-to factual findings and legal conclusions of the magistrate judge that are accepted by the district court, except upon grounds of plain error, provided that the party has been served with notice that such consequences will result from a failure to object.  *Douglass v. United Services Auto. Ass'n*, 79 F.3d 1415, 1417 (5th Cir. 1996) (en banc), *superseded by statute on other grounds*, 28 U.S.C. § 636(b)(1) (extending the time to file objections from ten to fourteen days).

**SIGNED this the 18th day of October, 2022.**

Christine L Stetson
UNITED STATES MAGISTRATE JUDGE