IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
LUFKIN DIVISION

| | |
|---|---|
| CORY GLENN ROLAND, § | |
| § | |
| *Plaintiff*, § | |
| § | |
| v. § | CIVIL ACTION NO. 9:21-CV-254-MJT |
| § | |
| NACOGDOCHES COUNTY, SALOMON § | |
| LANDEROS, JUSTIN CODY PIERCE, § | |
| AND JAY SMITH § | |
| § | |
| *Defendants*. § | |

**REPORT AND RECOMMENDATION ON**
**<u>PLAINTIFF'S MOTION FOR PARTIAL SUMMARY JUDGMENT (Doc. #99)</u>**

Pursuant to 28 U.S.C. § 636 and the Local Rules of Court for the Assignment of Duties to United States Magistrate Judges, the district court referred this proceeding to the undersigned magistrate judge for consideration and disposition of Plaintiff's Motion for Partial Summary Judgment. (Docs. #99, #129.) After review, the undersigned recommends denying the motion.

**I.   Background**

A. <u>Procedural History and Plaintiff's Claim</u>

This case arises from events during a voluntary interview of Plaintiff Cory Roland conducted by various law enforcement officers at the Nacogdoches County Sherriff's Office on March 5, 2021. (Doc. #23 at 3.) The law enforcement officers involved were Justin Cody Pierce and Joshua Tipton, who were both previously dismissed as Defendants, and current Defendant Salomon Landeros. (Docs. #1, #57, #62.) The officers were investigating Charles Seth Alexander, whom they suspected was involved in recent thefts in the area. The previous day, Landeros and Pierce located a stolen vehicle at the house shared by Plaintiff and Alexander and determined that the vehicle contained a stolen air compressor. Landeros, Pierce, and Smith

believed that Plaintiff could provide them with additional information about Alexander's suspected criminal activity. Importantly, Plaintiff did not attend the interview because he was in custody or under arrest—he attended the interview voluntarily to assist the officers with Alexander's criminal investigation, (doc. 23 at ¶34), regardless of whether the officers privately suspected Plaintiff's involvement in criminal activity and invited Plaintiff to the interview as a pretext. During this interview, a struggle ensued over Plaintiff's cellphone, which culminated in Landeros punching Plaintiff and seizing his phone.

On October 1, 2021, Plaintiff filed suit alleging various claims against several defendants. (Doc. #1.) Plaintiff's only live claim is for excessive force against Defendant Landeros. (Doc. #62.) The court has previously addressed this issue, albeit with a different posture, in Defendant's Motion for Summary Judgment filed on March 25, 2022. (Docs. #39, #54, #57.) In that motion, Defendant moved for summary judgment on the issue of qualified immunity. (Doc. #39.) The court referred that motion to the undersigned, who found that the relevant video evidence was "at best" ambiguous to key facts regarding Plaintiff's excessive force claim against Defendant Landeros. (Doc. #54 at 8.) The undersigned determined the issue of excessive force should be left to a jury and, therefore, recommended denying the motion. (*Id.*) The court adopted the undersigned's Report and Recommendation on November 23, 2022. (Doc. #57.)

On September 20, 2023, Plaintiff filed the instant motion asking the court to grant summary judgment on Plaintiff's excessive force claim and allow the court to proceed to trial on the issue of damages alone. (Doc. #99.) In essence, Plaintiff asks the court to reexamine the same video evidence from Defendant's prior motion. Defendant filed a response with additional evidence. (Doc. #103.) A reply and sur-reply have also been filed. (Docs. #106, #113.) The matter is now ripe for review.

B. <u>Plaintiff's Factual Assertions</u>

Plaintiff's Motion for Partial Summary Judgment claims the following are "undisputed" material facts.[1] (Doc. #99 at 5-12.) Plaintiff voluntarily appeared at the Nacogdoches County Sheriff's Office on March 5, 2021. (*Id.* at 5.) Plaintiff informed Defendant and the other officers that he had a headache at the beginning of the interview. (*Id*. at 7.) Rather than proactively procuring a warrant to search Plaintiff's phone, Defendant asked Plaintiff if he had any text messages from Seth Alexander. (*Id.*) Plaintiff answered in the affirmative and allowed Defendant to look at the text messages as Plaintiff scrolled through the conversation "at a slow and continuous rate." (*Id.*) Plaintiff fully cooperated and did not try to flee, nor did he ever try to delete any text messages or other potentially relevant evidence. (*Id.* at 11.) Plaintiff contends Landeros did not think there was probable cause that Plaintiff was trying to delete evidence. (*Id.* at 12.)

At some point during the interview, Defendant saw a picture in the text conversation between Plaintiff and Seth Alexander. (*Id.* at 8.) As Plaintiff scrolled past the picture, Defendant asked him about it. (*Id.*) Plaintiff went back to the picture and identified it as an air compressor, the same item at issue in the Seth Alexander investigation. (*Id.*) Defendant made a "brief gesture" that suggested he wanted Plaintiff's phone. (*Id.*) Plaintiff calmly and firmly said "No, you cannot have my phone. You can look, but you cannot have my phone." (*Id.*) Defendant then tried to grab the phone from Plaintiff's right hand, but Plaintiff held onto the phone and moved it to his left side as a reaction to Defendant's action. (*Id.*) Defendant then grabbed Plaintiff's wrist with one hand and put his other hand into a closed fist before violently striking Plaintiff multiple times

---

[1] Plaintiff's motion claims these facts are based on video footage from Officer Pierce's body camera. For the reasons discussed *infra* §§ I.D, II.B, the court cannot assume all of these "undisputed" facts are true, but will, instead, look to the video footage of the interview itself.

3

in the head and neck region. (*Id.* at 9.) Defendant and the other officers got the phone. (*Id.*) Plaintiff was confused as to why Defendant attacked him and said his headache was now worse. (*Id.*)

### C. Defendant's Factual Assertions

In his response, Defendant properly identified his various disputes with Plaintiff's version of events. (Doc. #103 at 2-5.) The undersigned will address these disputes as needed after any determination that Plaintiff met his burden under the summary judgment standard. *See infra* § II.A. As a general matter, Defendant contends that the undersigned had previously found, and the court agreed, that the referenced video evidence was ambiguous to various material facts. (Doc. #103 at 9-10). Additionally, Defendant includes additional evidence to further support a finding of disputes to material facts. (*Id.* at 10-28).

### D. Video Footage

In accordance with Supreme Court and Fifth Circuit precedent, the undersigned also considers the facts established by the video footage from former Defendant Pierce's body camera. (Doc. #99-2) [hereinafter Video]; *Scott v. Harris*, 550 U.S. 372, 380-81 (stating that the lower court should have viewed the facts in the light depicted by the videotape); *Crane v. City of Arlington*, No. 21-10644, 2022 WL 4592035, at *4 (5th Cir. Sept. 30, 2022) (citing *Harris v. Serpas*, 745 F.3d 767, 771 (5th Cir. 2014)). The facts established in the video are as follows.

During the interview, Defendant and the other officers asked Plaintiff if he had any text messages with Alexander. (Video at 19:40-19:44.) Plaintiff replied that he had "a few" and allowed Defendant to view these text messages standing over Plaintiff's right shoulder while Plaintiff held his phone in his right hand and, presumably, scrolled through his text conversations with Alexander. (Video at 19:45-20:15.) The video footage does not show the screen of

Plaintiff's phone, so the exact nature of what Landeros was viewing is not apparent. Plaintiff remained seated and appeared calm and cooperative as he voluntarily showed Defendant these text messages. As Plaintiff scrolled through his text messages, Defendant asked, "what is this?" referring to something on Plaintiff's phone. (Video at 20:14-20:16). At this time, Plaintiff appeared to stop scrolling by removing his thumb from the screen of his phone and held his phone in position for Defendant to continue to view. (Video at 20:16-20:19.) Using his left finger, Defendant then scrolled to the messages at issue while Plaintiff held his phone, and Plaintiff replied that the picture is of a "compressor." (Video at 20:16-20:21.) The undersigned notes, again, that, while the screen of the phone is not visible on the video footage, by closely watching Plaintiff's right hand as he held his phone, it appears that Plaintiff scrolled through his messages at a slow and continuous rate during the entire approximately thirty-second period he showed his phone to Defendant.

Defendant then appeared to make a gesture with his left hand for Plaintiff to hand him the phone, and Plaintiff, still seated, responded calmly but firmly, "No, you cannot have my phone. You can look, but you cannot have my phone." (Video at 20:20-20:27.) Defendant then grabbed the phone with his left hand and attempted to take it out of Plaintiff's right hand, while starting to say, "Well I'm gonna—." (Video at 20:27.) Plaintiff then jerked his right hand that is holding the phone over toward his left side, recoiling from Defendant's abrupt attempt to grab his phone. (Video at 20:28.) Defendant then leaned his body over Plaintiff to reach the phone now held on Plaintiff's left side, and, with both hands, Defendant grabbed Plaintiff's wrist and phone to forcefully pry it from Plaintiff's grip. (Video at 20:28-20:30.) The video footage then shows Defendant pulled his right arm back and visibly punched Plaintiff with a fist at least once as Pierce and Tipton gathered around Plaintiff and Defendant in response to the struggle. (Video at 20:30-

5

20:31.) Just after the punches, Plaintiff and Defendant dropped the phone, Pierce and Tipton surrounded Plaintiff, and various exclamations were uttered, such as Plaintiff yelling "what the hell" and Defendant and the other officers yelling "get back," "what's wrong with you." (Video at 20:31-20:35.) Defendant stated that they are seizing Plaintiff's phone as evidence. (Video at 20:36-20:37.) Defendant then picked up phone from the floor and set it on the other side of the room while Pierce and Tipton began to move away from Plaintiff. (Video at 20:35-20:42.)

## II. Legal Standard

### A. Summary Judgment Generally

Summary judgment should only be granted if the moving party can show that "there is no genuine dispute as to any material fact and that the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a). Where, as here, the movant bears the burden at trial, this rule places the initial burden on the moving party to identify those portions of the record which it believes demonstrate the absence of a genuine dispute of material fact. *See Celotex Corp. v. Catrett,* 477 U.S. 317, 323 (1986); *Stults v. Conoco, Inc.* 76 F.3d 651, 655-56 (5th Cir. 1996) (citations omitted); *Sanders v. Fort Bend Cnty.*, Tex., 932 F. Supp. 894, 896 (S.D. Tex. 1996). A dispute is genuine if the evidence is sufficient for a reasonable jury to return a verdict for the non-moving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255-56 (1986). A fact is material when it is relevant or necessary to the ultimate conclusion of the case. *Id.* at 248.

The undisputed material facts must establish "beyond peradventure" each element of the claim or defense that the movant bears at trial. *Spedag Americas, Inc. v. Bioworld Merch., Inc.*, No. 3:17-CV-0926-BT, 2019 WL 4689011, at *2 (N.D. Tex. Sept. 25, 2019) (citing *Fontenot v. Upjohn Co.*, 780 F.2d 1190, 1194 (5th Cir. 1986)). "Peradventure means without uncertainty." *Spedag Americas*, 2019 WL 4689011, at *2 (citing *In re Romulus Cmty. Sch.*, 729 F.2d 431, 435

6

(6th Cir. 1984)). Once the moving party has carried its burden, "the non-movant must show that summary judgment is not proper." *Spedag Americas*, 2019 WL 4689011, at *3 (citing *Duckett v. City of Cedar Park*, 950 F.2d 272, 276 (5th Cir. 1992)).

In considering a motion for summary judgment, "the evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in his favor." *Liberty Lobby, Inc.*, 477 U.S. at 255. The court must consider all the evidence but refrain from making any credibility determinations or weighing the evidence. *See Turner v. Baylor Richardson Med. Ctr.*, 476 F.3d 337, 343 (5th Cir. 2007) (citation omitted). Mere conclusory allegations are not competent summary judgment evidence, and thus are insufficient to defeat a motion for summary judgment. *Eason v. Thaler*, 73 F.3d 1322, 1325 (5th Cir. 1996). Unsubstantiated assertions, improbable inferences, and unsupported speculation are not competent summary judgment evidence. *See Forsyth v. Barr*, 19 F.3d 1527, 1533 (5th Cir.), *cert. denied*, 513 U.S. 871 (1994). Rule 56 does not impose a duty on the court to "sift through the record in search of evidence" to support the nonmovant's opposition to the motion for summary judgment. *Id.*; *see also Skotak*, 953 F.2d at 915–16 & n.7; FED. R. CIV. P. 56(c)(3) ("[T]he court need consider only the cited materials.").

### B. The Role of Video Evidence in Summary Judgment

As explained earlier, the undersigned is guided by Fifth Circuit and Supreme Court precedent explaining the role of video evidence at the summary judgment stage. When the record includes video evidence, courts are not bound to accept facts contradicted by the video. *Crane*, 2022 WL 4592035, at *4 (citing *Harris*, 745 F.3d at 771). To the extent that video evidence leaves certain facts ambiguous, courts must leave such ambiguities in materials facts to be resolved by the jury. *Cf. Crane*, 2022 WL 4592035, at *4 (quoting *Estate of Aguirre v. City of San Antonio*, 995 F.3d 395, 410 (5th Cir. 2021)) ("*Scott* was not an invitation for trial courts to

abandon standard principles of summary judgment by making credibility determinations or otherwise weighing the parties' opposing evidence against each other any time a video is introduced into evidence."); *see also Scott v. Harris*, 550 U.S at 381 ("[The lower court] should have viewed the facts in the light depicted by the videotape.").

Second, the undersigned is guided by this district's Local Rules, which only require the undersigned to assume facts from the moving party that are *supported* by admissible evidence. E.D. TEX. LOC. R. CV-56(c). The undersigned need not assume facts from the moving party that are contradicted by admissible evidence, such as video evidence—regardless of whether those facts are also controverted by a response from the nonmoving party. Therefore, the undersigned evaluates Plaintiff's claims that he is entitled to summary judgment on his excessive force claim "in the light depicted by the videotape," in conjunction with other supporting evidence. *Scott v. Harris*, 550 U.S. at 381.

### III.  Discussion

Plaintiff asserts that the video evidence "conclusively proves" that Defendant's use of force against Plaintiff was objectively unreasonable, meaning every reasonable juror would find for Plaintiff on his excessive force claim. (Doc. #99 at 18.) Defendant contends the video is ambiguous by itself, and that additional evidence attached to his response further challenges Plaintiff's relevant factual assertions. (Doc. #103 at 9-23.) As discussed *supra* § II, the undersigned first evaluates Defendant's conduct as depicted in the video footage, before next considering the excerpt from Defendant's deposition attached to the motion. Assuming Plaintiff makes a proper showing as the movant, the undersigned will then consider whether Defendant's evidence creates a dispute of any material facts.

A. <u>Ambiguity in the Video</u>

The undersigned finds the video is ambiguous in numerous ways. The exact area where Defendant punched Plaintiff and the number of punches Defendant delivered is not apparent from the video, because Plaintiff's body is partially obscured from view by Defendant's body and, thereafter, Pierce and Tipton's. The undersigned, however, observes that the video definitively shows that the first punch landed in close proximity to the lower half of Plaintiff's face. This indicates that the punch could have been delivered to a number of areas, including Plaintiff's upper shoulder, collar bone, neck, or face, but the exact area is not visible from the video footage. The undersigned also observed that Plaintiff rubbed his face after Defendant punched him, as if experiencing pain in that area, and he clears his throat, sniffs, and takes deep breaths, which further suggest his discomfort in that area. (Video at 20:51-21:09.) Additionally, Plaintiff later stated that Defendant hit him in the face. (Video at 55:36-55:38.) The area hit by subsequent punches is completely obscured in the video footage. In the previous Report and Recommendation, the undersigned found "that the video is, at best, ambiguous as to whether Landeros punched Plaintiff in the face," but noted it was also "highly suggestive of that fact." (Doc. #54 at 8.) After thorough review, the undersigned finds that a reasonable jury could disagree with her opinion of the video and, therefore, the area punched is a disputed fact.

The undersigned also finds that the video is ambiguous as to whether Plaintiff "resisted" Defendant or "escalated" his resistance. As noted in the prior Report and Recommendation, "a reasonable juror could find the footage shows that Plaintiff did not resist," as Plaintiff's initial movement of his phone could be "an instinctual, involuntary movement." (*Id.*) That was just one explanation of an ambiguous moment of the video and the undersigned still finds that this issue should be left to a jury to decide. Additionally, the undersigned finds that the video is ambiguous

9

as to whether Plaintiff suffered an "injury" within the meaning of an excessive force claim. It is not clear from the video whether and to what extent Plaintiff is injured.

Further, the undersigned finds that the video is ambiguous as to whether Defendant observed anything in Plaintiff's text messages establishing sufficient probable cause to seize Plaintiff's phone without a warrant pursuant to the plain view doctrine. While the video footage does not show the screen of Plaintiff's phone at any point, both parties appear to agree that the compressor at issue was visible in the text message chain. (Docs. #99 at 8, #103 at 7.) Whether a picture of the compressor, however, could be a evidence of a criminal activity that justifies the subsequent seizure is a fact question that should be left to a jury to decide. Although Plaintiff's complaint does not allege that this was an unconstitutional seizure in violation of his Fourth Amendment rights, the constitutionality of Defendant's seizure of Plaintiff's phone is relevant to the excessive force analysis, which considers the "governmental interest at stake" in effecting the seizure. *See infra* § III.B. Here, the asserted governmental interest is the alleged need to preserve evidence. Thus, the fact of whether there was probable cause to believe the phone contained evidence is material.

Relatedly, the undersigned previously found that, from her perspective, "there is nothing in the video that suggests Plaintiff attempted to hide any evidence from Landeros." (Doc. #54 at 10.) Still, the undersigned notes that a reasonable jury could find differently and, accordingly, left that decision for the jury to decide. (*Id.*) After further review of the video, the undersigned once again finds a jury should be allowed to decide whether Plaintiff was attempting to hide any evidence from Defendant.

In sum, the undersigned finds, as she did in the previous Report and Recommendation, that at least the following material facts are ambiguous from the video footage: (1) whether

Defendant punched Plaintiff twice in the face; (2) whether Plaintiff was resisting Defendant; (3) whether Plaintiff was injured; (4) whether Defendant had sufficient probable cause to seize Plaintiff's phone; and (5) whether there was a risk of Plaintiff destroying evidence from his phone.

### B. Plaintiff is Not Entitled to Partial Summary Judgment

The ambiguities listed above are highly relevant to the excessive force analysis. According to the Fifth Circuit, "[t]o prevail on an excessive force claim, a plaintiff must show '(1) an injury (2) which resulted directly and only from the use of force that was clearly excessive, and (3) the excessiveness of which was clearly unreasonable.'" *Orr v. Copeland*, 844 F.3d 484, 492 (5th Cir. 2016) (quoting *Ontiveros v. City of Rosenberg*, 564 F.3d 379, 382 (5th Cir. 2009)). "The second and third elements collapse into a single objective-reasonableness inquiry" guided by the *Graham* factors. *Pena v. City of Rio Grande City*, 879 F.3d 613, 619 (5th Cir. 2018). The *Graham* factors are "the severity of the crime at issue, whether the suspect poses an immediate threat to the safety of the officers or others, and whether he is actively resisting arrest or attempting to evade arrest by flight." *Graham v. Connor*, 490 U.S. 386, 396 (1989).

In the previous Report and Recommendation, the undersigned found that, based solely on the video, a reasonable jury could find all *Graham* factors suggest Defendant used excessive force. (Doc. #54 at 19-22.) While that remains true, the undersigned also finds that a reasonable jury could find Defendant did not injure Plaintiff with excessive force, especially given the ambiguous nature of the video on how exactly Defendant struck Plaintiff. A jury needs to determine the material facts of the situation and whether Defendant acted reasonably. Plaintiff has not meet his burden that he is entitled to a judgment as a matter a law based on the video alone.

The only other evidence attached to the instant motion is the oral deposition of Defendant. (Doc. #99-1.) Plaintiff claims that Defendant concedes in this deposition that "he did not have

reason to believe that Plaintiff was about to destroy evidence," and that this uncontested fact requires a finding that the force used was clearly excessive. (Doc. #9 at 18.) The cited portion of the deposition is, however, does not answer the "clearly excessive" element conclusively.

First, Plaintiff's counsel asked Defendant, "[d]id you believe your probable cause for taking the phone from Cory was that he was attempting to delete the picture [of the compressor]?" (Doc. #99-1 at 10.) Defendant answered "No." (*Id.*) Plaintiff's counsel then asked "[d]id you not have any probable cause then for taking Cory's phone at all?" (*Id.*) Defendant said, "I don't know," before both Plaintiff's counsel and Defendant's counsel debated whether the question was proper. (*Id.* at 11.)

In response, Defendant argues that the question and answer Plaintiff relies on is too narrow—was the probable cause for seizing the phone with force that you thought Plaintiff was actively destroying evidence. Instead, Defendant contends that he seized the phone because he was concerned that evidence would be destroyed while he obtained a warrant. (Doc. #103-1 at 5.) The undersigned is not empowered to determine the veracity of Defendant's assertion—that is the role of the jury. Whether the photo is evidence of a crime and Defendant was free to punch a witness to obtain said evidence without violating that witness' constitutional right is a question for the jury. Plaintiff should not be entitled to summary judgment on this issue.

### IV.     Recommendation

For the foregoing reasons, the undersigned recommends that Plaintiff's Motion for Partial Summary Judgment (doc. #99) be **DENIED**.

### V.      Objections

Within fourteen (14) days after service of the magistrate judge's report, any party must serve and file specific written objections to the findings and recommendations of the magistrate

judge. 28 U.S.C. § 636(b)(1)(C).  To be specific, an objection must identify the specific finding or recommendation to which objection is made, state the basis for the objection, and specify the place in the magistrate judge's report and recommendation where the disputed determination is found.  An objection that merely incorporates by reference or refers to the briefing before the magistrate judge is not specific.  Without leave of court, **objections are limited to eight (8) pages**. E.D. TEX. LOC. R. CV-72(c).

      Failure to file specific, written objections will bar the party from appealing the unobjected-to factual findings and legal conclusions of the magistrate judge that are accepted by the district court, except upon grounds of plain error, provided that the party has been served with notice that such consequences will result from a failure to object.  *Douglass v. United Services Auto. Ass'n*, 79 F.3d 1415, 1417 (5th Cir. 1996) (en banc), *superseded by statute on other grounds*, 28 U.S.C. § 636(b)(1) (extending the time to file objections from ten to fourteen days).

**SIGNED this the 24th day of May, 2024.**

_____

Christine L Stetson
UNITED STATES MAGISTRATE JUDGE